IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MEGAN BOROVICKA, <br> 482 58th St., <br> Oakland, CA 94609 <br><br> *Plaintiff,* <br><br> v. <br><br> MARTIN J. GRUENBERG, ACTING CHAIRMAN, <br> FEDERAL DEPOSIT INSURANCE CORPORATION <br> 550 17th Street, NW, <br> Washington, D.C. 20429 <br><br> Serve: <br><br>    DEBRA DECKER <br>    DEPUTY EXECUTIVE SECRETARY <br>    FEDERAL DEPOSIT INSURANCE <br>    CORPORATION <br>    550 17th Street, N.W., <br>    Washington, D.C. 20429 <br><br>    MERRICK GARLAND <br>    U.S. ATTORNEY GENERAL <br>    U.S. Department of Justice <br>    950 Pennsylvania Avenue, NW, <br>    Washington, D.C. 20530 <br><br>    MATTHEW M. GRAVES <br>    U.S. ATTORNEY FOR THE <br>    DISTRICT OF COLUMBIA <br>    United States Attorney's Office <br>    555 4th Street, NW, <br>    Washington, D.C. 20530 <br><br> *Defendant.* | Case No. :_____ <br><br><br> **JURY TRIAL DEMANDED** |

1

**CIVIL COMPLAINT FOR EQUITABLE AND
MONETARY RELIEF AND DEMAND FOR JURY TRIAL**

Plaintiff Megan Borovicka ("Borovicka") brings this suit against Defendant Federal Deposit Insurance Corporation ("FDIC") for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

**Parties**

1. Borovicka is resident of the city of Oakland, County of Alameda, in the State of California.

2. Defendant is the FDIC. The FDIC is headquartered in Washington, D.C. and is an Agency of the United States of America.

**Jurisdiction**

3. This Court has jurisdiction over the claim presented herein pursuant to 28 U.S.C. § 1331 because this is an action arising under the laws of the United States.

4. This court has subject matter jurisdiction over this complaint under 29 C.F.R. § 1614.407 because Borovicka filed a formal complaint of discrimination with the FDIC's EEO office on or about June 14, 2019. On or about March 4, 2022, the FDIC issued a final agency decision, granting Borovicka the right to file a civil action in District Court within 90 days.

**Factual Allegations**

5. Borovicka is a female. Prior to joining the FDIC, Borovicka had nearly eight years of experience as an employment attorney.

6. The FDIC maintains a Legal Division, which has a Corporate Operations Branch. Within that Branch is the Labor, Employment, and Administration Section ("LEAS"). The FDIC hired Borovicka as Labor and Employment Counsel (CG-15) in LEAS in its San Francisco Regional Office in or about July 2014.

7.  All CG-15 attorneys within LEAS perform substantially equivalent work as it relates to the primary job duties.

8.  During her tenure at the FDIC, the FDIC consistently issued Borovicka excellent performance reviews.

9.  Throughout her employment at the FDIC, Borovicka has had supervisory responsibilities for two employees: a paralegal named Linda Redding and a Legal Technician named Delany Carter.

10.  From Borovicka's hire in or about July 2014 to in or about the end of 2014, Judith Thomsen, Acting Senior Counsel, served as Borovicka's first-line supervisor. Christine Svevar served as Acting Assistant General Counsel, and Borovicka's second-line supervisor from the time of Borovicka's hire through July 2015, from in or about February 2017 through in or about June 2018, and for various periods since in or about March 2021. Svevar is currently the Acting Deputy General Counsel of the Corporate Operations Branch of the Legal Division. When Svevar is not performing the role of Assistant General Counsel or Deputy General Counsel, Svevar is a Senior Counsel and Borovicka's first-line supervisor. Thomsen and Svevar were the hiring managers responsible for selecting Borovicka for her position and for setting Borovicka's pay.

11.  Between in or about July 2015 and in or about June 2018, Harrel Pettway, the current FDIC General Counsel, served as Borovicka's second-line supervisor, Assistant General Counsel of LEAS.

12.  From in or about June 2018 to in or about March 2021, Jeff Rosenblum, current Deputy Director of the Division of Administration's Human Resources Branch & Chief Human

Capital Officer, served as Borovicka's second-line supervisor and Assistant General Counsel of LEAS.

13. Thomsen recommended that Svevar hire Borovicka based on her "extensive private sector experience in Employment and Labor Law"; "[s]he has defended against diverse employment matters, such as discrimination, retaliation, and wrongful termination cases"; her "superior academic credentials and impressive private sector experience specializing in the Labor and Employment area"; and because "she is described as highly analytical with an adept ability to distill complicated legal and factual issues in order to establish clear alternatives."

14. The FDIC's Directive 2220.1, Chapter 5.1 states that for new hires, base pay must be "set at the minimum of the grade for the position that the employee is being hired" but "new employees shall receive an appointment at a rate above the minimum basic pay when the employee *is or was receiving a higher rate of pay (highest previous rate) in a related field. . .*" Under the Directive, "the employee's higher adjusted rate of pay (or the equivalent) should be matched by comparing it with the FDIC Adjusted Basic pay for the official duty station." Directive 2220.1 defines "highest previous rate" as the highest rate of basic pay earned in a permanent position or under a temporary promotion lasting more than one year.

15. At the time of her selection, Borovicka provided documentation to the FDIC, consistent with FDIC policy and practice, that showed her previous salary as an attorney specializing in labor and employment law at Morgan Lewis LLP, an international law firm, was approximately $265,000 per year.

16. FDIC's HR department told Thomsen that Borovicka's matching pay at the FDIC would be approximately $212,000 with a base salary of $149,149. HR also informed Thomsen that such a number would require review from the FDIC's headquarters. FDIC's HR department

also told Thomsen that the highest base salary rate which would not require further review and approval was $146,910, which would total $208,818 with the San Francisco locality adjustment. Thomsen subsequently recommended to Svevar and obtained Svevar's approval to tell HR to set Borovicka's starting base salary at only $120,686.

17. The FDIC hired Borovicka at a starting salary of $171,543 per year, in the form of a base salary of $120,686 and a San Francisco locality rate of 42.14 percent.

18. Borovicka told Thomsen that the FDIC's offer was significantly lower than her previous salary at Morgan Lewis, to which Thomsen responded that HR had already taken that into account and that a base salary of $120,686 was the best that could be done.

19. In or about July 2014, Borovicka began working at the FDIC with a total salary amounting to $171,543, approximately $93,457 lower than her highest previous salary, and $37,275 lower than the amount the FDIC HR department recommended as a starting salary as close as possible to matching Borovicka's higher previous pay in a related field without seeking further review or approval.

20. In or about spring 2016, Svevar told Borovicka that she was adding Eric Gold, a male, CG-15 attorney, to a matter assigned to Borovicka because the opposing party, a complainant-employee, had retained an aggressive male attorney and the FDIC needed "someone with more facial hair on our side."

21. Conor Moore is an attorney in the FDIC's Legal Division in the San Francisco Regional Office, who focuses on banking compliance and consumer protection. Moore is a CG-14 attorney and has no supervisory duties. Moore's primary job duties are substantially equal to that performed by Borovicka.

22. In or about January 2019, FDIC headquarters sent an email to some employees, including Moore, regarding changes in the applicability of certain ethics rules. When the FDIC emailed Moore regarding the ethics rules, Moore contacted Borovicka to ask about the reasons for these changes. Borovicka told Moore that the changes were triggered by salary level. Borovicka, a CG-15, learned from Moore, a CG-14 attorney with similar years and private sector experience as Borovicka, that his salary was approximately $249,142, as opposed to Borovicka's salary, which was at that point in the amount of $203,076. Borovicka also learned that Moore's starting salary was higher than hers. Ivan Cintron, Moore's then manager, expressed shock to Borovicka about how low Borovicka's salary was and how it was set, and he referred to the FDIC's policy described in Directive 2220.1.

23. Borovicka learned that, pursuant to Directive 2220.1, Cintron approved as high a matching salary as possible for Moore after Moore provided evidence that he made approximately $190,000 in a prior private practice job before joining the FDIC. In 2012, the FDIC offered Moore a starting salary of $185,845 as a CG-14 attorney.

24. Borovicka did not speak to Svevar about the disparity she learned of in January 2019, because Svevar was the hiring manager responsible for approving Borovicka's starting salary. However, Borovicka reported her concerns to Rosenblum, who did not resolve Borovicka's concerns.

25. Borovicka researched LEAS attorney pay rates that are publicly available, and ultimately determined that she has been paid a lower base salary than nearly all of them. Several other LEAS attorneys who are male include: Duane Pitt, Aaron Norman, Antonier White, Samuel Brooks, Stephen Kott, Thomas Sarisky, Nestor Ramirez Cuebas, Scott Cooper, Louis Kelly, Eric Gold, and William Edwards.

26. Thomas Sarisky, Stephen Kott, Nestor Ramirez Cuebas, and Scott Cooper work in the Employment Unit.

27. Aaron Norman and Antonier White work in the Labor Unit.

28. Borovicka, Duane Pitt, William Edwards, Louis Kelly, and Samuel Brooks work in the Labor and Employment Field Unit.

29. In 2014, Borovicka's base salary was $120,686.

30. In 2015, while Borovicka received a base salary of $122,296, Aaron Norman, a new hire, received a base salary of $130,215.

31. In 2016, while Borovicka received a base salary of $126,354, FDIC assigned Samuel Brooks a base salary of $145,000. The FDIC assigned Antonier White a base salary of $136,497. Stephen Kott transferred into the LEAS Division and started at a base salary of $169,350.

32. In 2017, Borovicka received a base salary of $130,430. Samuel Brooks continued at a base salary of $145,000. Antonier White continued at a base salary of $136,497. Stephen Kott received a base salary of $174,852. Aaron Norman received a base salary of $137,984. William Edwards received a base salary of $149,639. Scott Cooper received a base salary of $187,524. Nestor Ramirez Cuebas received a base salary of $190,091. Louis Kelly received a base salary of $190,091. Thomas Sarisky received a base salary of $205,121. Eric Gold received a base salary of $174,658.

33. In 2018, Borovicka received a base salary of $134,575. Samuel Brooks received a base salary of $149,608. Antonier White received a base salary of $140,834. Stephen Kott received a base salary of $180,476. Aaron Norman received a base salary of $142,369. William Edwards received a base salary of $155,345. Scott Cooper received a base salary of $192,747.

Nestor Ramirez Cuebas received a base salary of $192,747. Louis Kelly received a base salary of $192,747. Thomas Sarisky received a base salary of $192,747. Eric Gold became Acting Senior Counsel in February 2018 and was no longer a comparator.

34. In 2019, Borovicka received a base salary of $138,827. Samuel Brooks received a base salary of $154,335. Antonier White received a base salary of $145,284. Stephen Kott received a base salary of $186,178. Aaron Norman received a base salary of $147,767. William Edwards received a base salary of $161,235. Scott Cooper received a base salary of $195,445. Nestor Ramirez Cuebas received a base salary of $195,445. Louis Kelly received a base salary of $195,445. Thomas Sarisky received a base salary of $195,445.

35. In or about December 2019, the Agency increased Borovicka's base pay by approximately $8,940.

36. In 2020, while Borovicka received a base salary of $151,357, Samuel Brooks received a base salary of $158,348. Antonier White received a base salary of $182,952. Stephen Kott received a base salary of $191,019. Aaron Norman received a base salary of $151,609. William Edwards received a base salary of $165,427. Scott Cooper received a base salary of $196,422. Nestor Ramirez Cuebas received a base salary of $196,422. Louis Kelly received a base salary of $196,422. Thomas Sarisky received a base salary of $196,422.

37. Currently, Borovicka receives a base salary of $154,859. Samuel Brooks's current base salary is $161,990. Antonier White's current base salary is $187,160. Stephen Kott's current base salary is $195,412. Aaron Norman's current base salary is $154,641.

38. Borovicka consistently had a lower base salary than each of her comparators except for Duane Pitt, and she only had a higher base salary than Aaron Norman in 2021.

39. In 2016, Samuel Brooks's starting base pay was $145,000, which is higher than Borovicka's starting base pay of $120,686. When Brooks was hired, the FDIC sought a pay exception for a higher salary because Brooks "possesses the knowledge, skills, and experience to successfully perform" his duties and because he had "solid litigation experience" handling a "full range of civil litigation including employment discrimination cases." Yet though the FDIC made similar comments about Borovicka, it paid her substantially less than HR's recommended salary that would match her previous salary as closely as possible without further approval and did not seek a pay exception for a higher salary.

40. In 2016, Antonier White's starting base pay was $136,497, which is higher than Borovicka's starting base pay of $120,686.

41. In 2015, Aaron Norman's starting base pay was $130,215, which is higher than Borovicka's starting base pay of $120,686.

42. In 2016, Stephen Kott's starting base pay as a LEAS attorney was $165,000, which is higher than Borovicka's starting base pay of $120,686. Notably, Kott had no experience in labor and employment law prior to his transfer to the LEAS section.

43. In or about May 2019, Borovicka initiated contact with the EEO office.

44. In or about June 2019 after Borovicka had filed her internal complaint of gender discrimination, Borovicka and Duane Pitt had a conversation with Judith Thomsen in Arlington, Virginia. Thomsen told Borovicka and Pitt that she understood they were unsatisfied with their pay. Thomsen made a statement to the effect that LEAS had not gotten good advice from HR regarding the setting of their pay.

45. During that same trip to Arlington, Virginia, Borovicka attended a training and after the training, a group dinner which Svevar also attended. At the dinner, Svevar made a

statement to the effect that she had seen former FDIC Chairman Sheila Bair on television, but she did not remember what Bair said because she was just so distracted by her hair and makeup. Svevar turned to Borovicka and made a statement to the effect of, "I know that's the most sexist thing."

46. Later at the dinner, while together in conversation with other male colleagues, Svevar passed a picture of an evening gown on her phone across the table to Borovicka. Borovicka was confused as to why Svevar showed her and the group this picture, particularly because the dress was very revealing and did not have material covering the midriff or much of the chest. Borovicka said something along the lines of, "It looks like something to wear to the opera," as an attempted jest to try to connect the dress to earlier conversation about opera, and an attempt to redirect conversation away from the revealing nature of the dress.

47. In response, Svevar said to Borovicka, "I often think about you when I am shopping and see things like this." Given the revealing style of the dress, and the implied invitation for the group to picture Borovicka wearing it, Borovicka felt undermined in front of her male colleagues for being regarded by her boss for her appearance rather than her skills or accomplishments.

48. Due to the discrimination based on sex with regard to inequitable pay to which Borovicka has been subjected, she has suffered economic damages.

## Count I
### Title VII – Gender Discrimination

49. Borovicka incorporates the allegations in the foregoing paragraphs as though alleged herein.

50. Borovicka is an "employee" as the term is defined at 42 U.S.C. § 2000e(f).

51. FDIC is an "employer" as the term is defined at 42 U.S.C. § 2000e(b).

52. Borovicka is a member of a protected class, as a female, under Title VII.

53. FDIC unlawfully discriminated against Borovicka by treating her less favorably than it treats male employees.

54. The FDIC did not follow its pay setting policy when it lowered her starting salary significantly below an amount proposed by HR that was as close as possible to matching her prior pay in a related field and did not require further review or approval from headquarters. The FDIC followed this pay setting policy, however, when setting pay for male attorneys performing similar work to Borovicka. Borovicka's gender motivated the FDIC's failure to apply the same policy to her as it did to her male colleagues.

55. The FDIC's purported reasons for not giving Borovicka a comparable salary to her male colleagues and not applying its pay-setting policy to her as it did to her male colleagues are pretext for unlawful discrimination.

56. For the FDIC's unlawful discrimination against Borovicka, pursuant to Title VII, Borovicka is entitled to general and special damages, economic damages including front and back pay, promotion, compensatory damages, reasonable attorney's fees to be paid by the FDIC, as well as Borovicka's costs and any other legal and/or equitable relief that this Court deems appropriate.

**Prayer for Relief**

WHEREFORE, Borovicka respectfully requests that the Court enter judgment in her favor and award to her the following relief:

a. Economic damages for lost compensation and damages to Borovicka's career;

b. Compensatory damages, including but not limited to pain and suffering, emotional distress, and reputational damage;

c. Pre-judgment interest;

d. Interest due on unpaid wages;

e. Reasonable attorneys' fee and costs of this litigation;

f. Injunctive and declaratory relief;

g. Reasonable costs and experts' and attorneys' fees; and

h. Any other such relief that the Court may deem just and equitable.

**Demand for Jury Trial**

Borovicka requests a trial by jury for any and all issues proper to be so tried.

Date:  05/20/2022                                     Respectfully submitted,

 /s/Anita M. Chambers____
R. Scott Oswald, #458859
Anita M. Chambers, #1046845
The Employment Law Group, P.C.
1717 K Street, N.W., Suite 1110
Washington, D.C. 20006
(202) 261-2821
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
achambers@employmentlawgroup.com

*Counsel for Plaintiff*